IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CV-00520-GCM

| | |
|---|---|
| ERIN KEENA, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| GROUPON, INC., | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant Groupon Inc.'s Motion to Compel Arbitration or in the Alternative Dismiss Pursuant to Rule 12(b)(6). (Doc. No. 21). Plaintiff filed a Response in Opposition on May 9, 2016 (Doc. No. 30), and Defendant filed its Reply on May 31 (Doc. No. 31). Accordingly, Defendant's Motion is ripe for disposition. For the following reasons, Defendant's Motion to Compel Arbitration will be **GRANTED**, and its Motion to Dismiss Pursuant to Rule 12(b)(6) will be **DENIED AS MOOT**. Plaintiff also filed a Motion to Defer Consideration of Defendant's Motion to Dismiss (Doc. No. 25), which will be **DENIED AS MOOT.**

## BACKGROUND

Defendant is a web-based company that partners with retail businesses and offers the businesses' products and services for a discounted price if purchased from Defendant's website. (Doc. No. 30 at 1). On February 1, 2015, Plaintiff purchased a voucher for massage services through Defendant's website to be rendered by the company Mutatio Wellness. (Doc. No. 1 ¶ 6). However, Plaintiff was unable to contact Mutatio Wellness to schedule the massage. (*Id.* at ¶ 9). Plaintiff requested a refund from Defendant, and Defendant refunded Plaintiff's purchase by

1

crediting her account with "Groupon Bucks," which can only be used to make purchases on Defendant's website. (*Id*. at ¶ 11).

Before purchasing the massage voucher through Defendant's website, Plaintiff acknowledged and accepted Defendant's Terms of Use, including its arbitration provision, on two separate occasions. (Doc. No. 22 at 2-3). First, in order to make purchases on Groupon, Plaintiff was required to create an account. She entered her name, email address, and password, and agreed to Defendant's Terms of Use by clicking a box immediately next to the words "I agree to the Terms of Use and Privacy Statement." (Doc. No. 22-1, Exhibit 1 ¶ 4). The words "Terms of Use" appeared as a prominent blue hyperlink that linked to the full version of Defendant's Terms of Use. (*Id*. at ¶ 6). Second, when Plaintiff purchased the massage voucher, she was required to click a button that said "Complete Order" in order to complete the purchase. (*Id*. at ¶ 8). Directly above the "Complete Order" button was a sentence stating: "[b]y clicking 'Complete Order' I accept the current Terms and Conditions and Privacy Policy." (*Id*. at ¶ 9). The words "Terms and Conditions" were again a blue hyperlink that linked to Defendant's Terms of Use. (*Id*.)

The version of Defendant's Terms of Use that was in effect in 2015 was an eight page agreement that included an arbitration provision on the seventh page. (Doc. No. 30, Exhibit B at 7). The arbitration provision was bolded and listed under a blue heading entitled "Dispute Resolution." (*Id*.) The provision stated:

> **Except as specifically stated herein, any dispute or claim between you and Groupon arising out of, or relating in any way to, the Terms of Use, the Site or your use of the Site, or any Products, Merchant Offerings or services offered or distributed through the Site ("Disputes") shall be resolved exclusively by final, binding arbitration** . . . **By virtue of this Agreement (defined below), you and Groupon are each giving up the right to go to court and have a Dispute heard by a judge or jury** . . . .

(*Id.*) (emphasis in original). The provision established that Illinois law, the Federal Arbitration Act, and the American Arbitration Association rules would govern any disputes. (*Id.*) It also guaranteed that Defendant would reimburse arbitration fees up to $10,000 for non-frivolous disputes, and that Defendant would not seek attorney fees or arbitration costs for non-frivolous disputes. (*Id.*) Additionally, the arbitration agreement contained a class action waiver, under which the parties agreed that all disputes would be arbitrated on an individual basis. (*Id.*)

Plaintiff filed this suit on October 29, 2015, alleging breach of contract, breach of the covenant of good faith and fair dealing, fraud and deceit, unjust enrichment, unfair and deceptive trade practices, fraudulent inducement, and negligence. (Doc. No. 1). On April 8, 2016, Defendant filed a Motion to Compel Arbitration or in the Alternative to Dismiss Pursuant to Rule 12(b)(6). (Doc. No. 21). Plaintiff then filed a Rule 56(d) Motion to Defer Considering Defendant's Motion to Dismiss on April 29, 2016, arguing that the Court should defer considering Defendant's Motion until summary judgment so that Plaintiff could obtain discovery materials. (Doc. No. 25). Plaintiff also filed a Response in opposition to Defendant's Motion to Compel (Doc. No. 30), and Defendant then filed a Reply (Doc. No. 31).

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") applies to provisions in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. The Supreme Court has described the FAA as "a liberal federal policy favoring arbitration," and stated that arbitration agreements must be enforced according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). As a result, this Court must compel arbitration if: "(i) the parties have entered into a valid agreement

3

to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." *Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc.,* 807 F.3d 553, 563 (4th Cir. 2015).

In order to decide whether parties have an enforceable agreement to arbitrate a certain matter, courts apply state law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In the present case, Illinois contract law applies because Defendant's Terms of Use includes a choice of law provision stating that any disputes regarding Groupon's services will be governed by Illinois law. (Doc. No. 22-1, Exhibit 1, Exhibit C, at 12). *See Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (noting that "the Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity"). Under Illinois law, "the objective in interpreting the contract is to ascertain and give effect to the intent of the parties" based on "the objective manifestations of the parties, including the language they used in the contract." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (citing *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. 2006)).

## DISCUSSION

**A. Traditional preemption doctrine applies**

The FAA creates a "federal substantive law of arbitrability, applicable to any arbitration within the coverage of the Act." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Supreme Court has found that the FAA preempts state law to the extent that state law conflicts with the FAA. *See Concepcion*, 563 U.S. at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the FAA displaces the conflicting rule."). Even generally applicable state rules will be preempted by the FAA when state laws "stand as an obstacle to the accomplishment of the FAA's objectives." *Id*. As a result, even though the Court

must apply Illinois law due to the choice of law provision in the Terms of Use, Illinois law that is "applied in a fashion that disfavors or interferes with arbitration" cannot be applied because it is preempted by the FAA. *See id.*

Although Plaintiff correctly contends that Illinois law applies in this case, Plaintiff is incorrect in her argument that the traditional preemption doctrine will not apply. Plaintiff argues that because the parties agreed in the Terms of Use that Illinois law would govern any disputes, federal law, including the FAA, cannot preempt Illinois law. (Doc. No. 30 at 7). Plaintiff supports her argument with *Epps v. JP Morgan Chase Bank, N.A.*, in which the Fourth Circuit held that "when a party to a contract voluntarily assumes an obligation to proceed under certain state laws, traditional preemption doctrine does not apply to shield a party from liability for breach of that agreement." 675 F.3d 315, 326 (4th Cir. 2012). However, in *Epps* the choice of law provision in the parties' contract stated that a specific state statute, the Maryland Credit Grantor End Credit Provisions ("CLEC"), would govern the contract. *Id.* at 318. Although a federal law equivalent would have preempted CLEC, the Court found that because the parties had specifically agreed to apply CLEC, CLEC could not be preempted, and the parties were bound by it. *Id.* at 328. The court's reasoning in *Epps* focused on the provision of the contract that stated CLEC specifically would apply to the contract, not on its provision that Maryland law generally would govern the parties' disputes. *Id.* By contrast, in the present case, the choice of law provision only specifies that "applicable federal laws and the laws of the State of Illinois" will govern disputes and thus leaves room for preemption. (Doc. No. 30, Exhibit B at 7).

Further, the FAA specifically has been interpreted to preempt conflicting state law. *See Concepcion*, 563 U.S. at 344. The Supreme Court emphasized that the purpose of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms," and held that

5

state laws that conflict with the FAA will be displaced. *Id*. Thus, to the extent that Illinois law is inconsistent with the FAA, it will be preempted.

### B. The arbitration agreement is not unconscionable

The question of whether a contractual clause is unconscionable is a question of law to be decided by the Court. *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006). Under Illinois law, "unconscionability can be either 'procedural' or 'substantive' or a combination of both." *Id*. Here, Plaintiff advances both types of unconscionability arguments.

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Id*. Plaintiff emphasizes that the Terms of Use was a document "that totals 8 pages in length, and is drafted in single-spaced format and 7-point font" and includes "an incomprehensible maze of links to various additional information." (*Id*. at 12-13). Plaintiff alleges that the arbitration provision was "hidden" by Defendant because it was included on the seventh page of the eight page Terms of Use. (*Id*. at 14). Plaintiff also contends that Defendant's Terms of Use was procedurally unconscionable because even though Plaintiff was presented with a hyperlink to the Terms of Use on two occasions, Plaintiff was never required to read or sign the Terms of Use. (Doc. No. 30 at 11).

Plaintiff's procedural unconscionability argument fails because Plaintiff does not allege that she was unable to view or understand the Terms of Use. As long as parties have access to contract provisions and the capability to read them before agreeing to them, "[c]ompetent adults are bound by such documents, read or unread." *Bess v. DirecTV, Inc*., 885 N.E.2d 488, 497 (citing *Hill v. Gateway 2000, Inc*., 105 F.3d 1147, 1149 (7th Cir.1997)). Thus, whether Plaintiff was required to read or actually did read the Terms of Use has no bearing on its enforceability.

6

Because Defendant provided Plaintiff with the Terms of Use both before Plaintiff created her account and again before Plaintiff purchased the massage voucher, Plaintiff had ample opportunity to read the provisions of the Terms before continuing and cannot now plead unconscionability because she failed to do so. *Cf. Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 385 (7th Cir. 2007) ("The fact that [Plaintiff] had to agree not once, but twice, to abide by the Terms and Conditions set forth . . . is enough to ensure that [it] had clear and reasonable notice of the rules.").

Further, providing hyperlinks to a contract during an online order process is sufficient to place consumers on notice of the contract. *See Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121 (Ill. App. 2005) (stating that a hyperlink indicates additional information that is part of an agreement and effectively functions as "turning the page of a written paper contract"). For example, in *Hubbert v. Dell Corp.*, a company was found to have adequately communicated its terms and conditions by providing access to it using blue hyperlinks on web pages during its online ordering process. *Id*. In this case, Defendant similarly provided access to its Terms of Use using blue hyperlinks on multiple pages of its ordering process. (Doc. No. 22-1, Exhibit 1 ¶ 6, 9). Thus, although Plaintiff alleges "Groupon's website makes it extremely difficult, if not impossible, for a consumer to find, read, and understand the terms" (Doc. No. 30 at 11), Defendant provided sufficient access to its Terms of Use by including hyperlinks to the Terms on multiple web pages that Plaintiff necessarily accessed when making her purchase.

Additionally, Plaintiff cannot claim that she was unable to find or read the Terms of Use because she expressly consented to them. (Doc. No. 22-1, Exhibit 1, Exhibit A). Illinois contract law allows clicking a button to constitute assent to an agreement if the website provides reasonable notice that clicking the button constitutes assent. *Sgouros v. TransUnion Corp.*, 817

7

F.3d 1029, 1036 (7th Cir. 2016) ("A website might be able to bind users to a service agreement by placing… a clearly labeled hyperlink to the agreement, next to an "I Accept" button that unambiguously pertains to that agreement."). Plaintiff checked a box directly beside a sentence that contained a hyperlink to the Terms of Use and stated that she agreed to the Terms of Use. (Doc. No. 22-1, Exhibit 1, Exhibit A). Thus, Plaintiff not only had the opportunity to read the Terms of Use, but she expressly consented to them. The fact that the Terms of Use was eight pages long, or that the arbitration provision was not referenced until the seventh page, does not establish unconscionability when Plaintiff had the opportunity to read and review the Terms of Use and then affirmed that she had done so.

Plaintiff also alleges the arbitration provision is procedurally unconscionable because there was a disparity of bargaining power. (Doc. No. 30 at 15). Defendant drafted the Terms of Use and offered it to customers on a take-it-or-leave-it basis, which establishes some level of disparity in bargaining power. (*Id*.) However, contracts of adhesion, or take-it-or-leave-it contracts, have become the norm, and the disparity in bargaining power that results from these contracts is not considered sufficient to render them unconscionable. *See Concepcion*, 563 U.S. at 346-47 ("[T]he times in which consumer contracts were anything other than adhesive are long past."); *Carbajal v. H & R Block Tax Services, Inc.*, 372 F.3d 903, 906 (7th Cir. 2004) (stating that contracts of adhesion reduce transaction costs and benefit consumers by lowering prices). Thus, the fact that Defendant drafted the Terms of Use and offering it to Plaintiff on a take-it-or-leave-it basis does not itself render the Terms of Use unconscionable or unenforceable.

Additionally, Plaintiff contends the Terms of Use is substantively unconscionable. Substantive unconscionability "refers to those terms which are inordinately one-sided in one party's favor." *Razor*, 854 N.E.2d at 622. Factors that suggest a contract is substantively

unconscionable include "gross inequality in the bargaining positions of the parties, together with terms unreasonably favorable to the stronger party." *Ahern v. Knecht*, 563 N.E.2d 787, 792 (Ill. App. 1990). Plaintiff points to multiple elements that allegedly make the Terms of Use unreasonably favorable to Defendant and constitute substantive unconscionability: (1) the requirement that disputes be brought within one year (Doc. No. 30 at 18-19), (2) a provision permitting parties to bring intellectual property claims or claims based on prohibited user conduct in court, even though Defendant would be unable to bring these types of claims against a consumer (*id*. at 19-20), and (3) prohibitively expensive costs of arbitration (*id*. at 20-23).

First, although the Terms of Use provided a shorter time period in which consumers could bring claims than the time period established by the statute of limitations, parties are permitted to agree to a "shortened contractual limitation period to replace a statute of limitations, so long as it is reasonable." *County Preferred Ins. Co. v. Whitehead*, 979 N.E.2d 35, 43 (Ill. 2012). Plaintiff did not supplu any support for her allegations that one year constitutes an unreasonable limitation, and the mere fact the Terms of Use shortens the statute of limitations does not render it unconscionable. *See 1000 Condo. Ass'n v. Carrier Corp.*, 535 N.E.2d 1144, 1147 (Ill. App. 1989) (upholding one-year time period for filing suits based on contractual disputes); *Vill. of Lake In The Hills v. Illinois Emcasco Ins. Co.*, 506 N.E.2d 681, 684 (Ill. App. 1987) (same).

Second, Defendant contends that the language of the Terms of Use—"either party may bring a suit in court seeking an injunction or other equitable relief arising out of or relating to the infringement of a party's intellectual property" —emphasizes that both parties have the option to bring intellectual property suits in court. (Doc. No. 31 at 7). Although Defendant may be more likely to bring intellectual claims than consumers are, it is still feasible that a consumer could

9

bring a suit against Defendant for violating their intellectual property rights. (*Id*.) For example, because Defendant is a technology company, it is possible that a customer would have an interest in enjoining Defendant from using computer software in violation of intellectual property rights. (*Id*.) Thus, Plaintiff's claim that Defendant unilaterally reserved the right to bring suits in court is without merit. (Doc. No. 30 at 20).

Moreover, even if Defendant is the primary beneficiary of this provision, this does not necessarily render the Terms of Use substantively unconscionable. There is a normal give and take within a contract such that each party does not derive equal benefits from each provision. *Fagerstrom v. Amazon.com, Inc.*, -- F. Supp. 2d --, 2015 WL 6393948, at *11-13 (S.D. Cal. Oct. 21, 2015), *appeal filed sub nom. Wisely v. Amazon.com*, 15-56799 (9th Cir. Nov. 23, 2015). For a provision to be considered unconscionable it must go further than merely being more beneficial to one party, but must be "totally one-sided or oppressive, one 'which no man in his senses, not under delusion, would make.'" *Bires v. WalTom, LLC*, 662 F. Supp. 2d 1019, 1035 (N.D. Ill. 2009) (citing *In re Marriage of Lee*, 481 N.E. 2d 1045, 1048 (Ill. App. 1985). Even if the Terms of Use permits Defendant to bring suits in court more often than consumers, this provision is not so one-sided or oppressive to constitute unconscionability.

Third, the costs of arbitration are not high enough to render the contract unconscionable, because the Terms of Use specifies that Defendant will bear the costs of arbitration. (Doc. No. 31 at 8). The party seeking to invalidate an arbitration agreement on the grounds that it is prohibitively expensive bears the burden of showing the likelihood of incurring such costs. *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 756 (N.D. Ill. 2015). There are two pertinent questions when determining whether the costs associated with arbitration are prohibitive: (1) how the party's financial situation will be factored into an assessment of the arbitration costs and

10

(2) "how the costs will compare between litigating in the courts versus proceeding in arbitration." *Id*. The Terms of Use state that Defendant will reimburse Plaintiff for the arbitration filing fee, arbitrator fees, and other administration fees in non-frivolous disputes. (Doc. No. 31 at 8). Therefore, Plaintiff will not have arbitration costs other than potential attorney's fees, so the costs of arbitration would not be more than Plaintiff would expect to face in court.[1] (Doc. No. 31 at 8). Because Defendant agreed in the Terms of Use to bear the costs of arbitration, the costs for Plaintiff to arbitrate the dispute are not prohibitively expensive.

### C. The arbitration clause is not illusory

Finally, Plaintiff argues the arbitration clause is unenforceable because it is illusory. (Doc. No. 30 at 24). An illusory promise "appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything," such that it does not provide sufficient consideration to establish a contract. *W.E. Erickson Const., Inc. v. Chicago Title Ins. Co.*, 641 N.E.2d 861, 864 (Ill. App. 1994). Plaintiff alleges that the arbitration provision is illusory because "although the verbiage used in the arbitration agreement appears as though it relates to both parties, in actuality, it only relates to one." (Doc. No. 30 at 25). Plaintiff points to the language in the arbitration agreement that states "we each agree that disputes shall be arbitrated only on an individual basis". (Doc. 30, Exhibit B at 7). Plaintiff argues that although this provision appears on its face to benefit both parties, it in fact only benefits Defendant because there is no situation where Defendant would initiate a class action against Plaintiff. (*Id.*) Further, the Terms of Use state that "either party" can bring a dispute in court for intellectual

---

[1] Although Plaintiff argues that she would be forced to pay "extremely expensive" attorney's fees if the parties resolved their dispute through arbitration and that these attorney's fees would be prohibitively expensive, Plaintiff makes no argument that the attorney's fees from arbitration would be greater than those from bringing the claim in court. (Doc. No. 30 at 23). Thus, if the parties are required to arbitrate, Plaintiff would be in the same position as if she brought the case in court so the arbitration provision cannot be considered unconscionable. (Doc. No. 31 at 8).

11

property claims or claims based on Section 7 (prohibited user conduct). (Doc. 30, Exhibit B at 7). However, Plaintiff argues that only consumers can violate the intellectual property and consumer conduct provisions, so that allowing either party to bring suits on these violations is illusory because Defendant will actually be able to do so. (Doc. No. 30 at 26).

Plaintiff's argument fails because Defendant did provide consideration for the arbitration provisions, even if the obligations required of Plaintiff and Defendant are not equivalent. A contract is valid and not illusory if there is consideration for the contract, even if the obligations of the parties are not mutual. *See Carter v. SSC Odin Operating Co., LLC,* 976 N.E.2d 344 (Ill. 2012) (holding the benefits exchanged by parties to a contract do not have to be equivalent to establish consideration). Further, "'a mutual promise to arbitrate is sufficient consideration to support an agreement to arbitrate,' even if the parties do not agree to identical obligations." *Williams v. TCF Nat. Bank*, No. 12 C 05115, 2013 WL 708123, at *11 (N.D. Ill. Feb. 26, 2013) (citing *Bishop v. We Care Hair Dev. Corp.*, 738 N.E.2d 610, 623 (Ill. App. Ct. 2000)). Under the arbitration provision in the Terms of Use, Defendant gave up the ability to bring claims other than intellectual property and consumer conduct violations in court just as Plaintiff did. (Doc. No. 30, Exhibit B at 7 ("you and Groupon are each giving up the right to go to court and have a Dispute heard by a judge or jury")). Thus, Defendant did provide consideration for the arbitration provisions, even if the Terms of Use affords Defendant more opportunities to bring intellectual property or consumer conduct claims in court than Plaintiff.

Plaintiff also alleges the Terms of Use Agreement is illusory because Mutatio Wellness, the company from which Plaintiff purchased the massage, did not exist at the time of Plaintiff's purchase. (*Id*. at 40). Plaintiff argues that because there was no way for Defendant to provide the massage that Plaintiff purchased, Defendant provided no consideration in return for Plaintiff's

12

promise to arbitrate disputes. (*Id*.) However, in the Terms of Use Defendant disclaims warranty regarding the accuracy or reliability of the content on its website, including merchant offerings. (Doc. 30, Exhibit B at 5). Further, consideration is the "bargained-for exchange of promises or performances, and may consist of *a promise*, an act or a forbearance." *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 352 (Ill. 2012) (citations omitted) (emphasis added). Under this definition, Defendant provided consideration merely by promising to provide a voucher that Plaintiff could exchange for a massage at Mutatio Wellness. Therefore, Plaintiff's argument that these massage services did not exist at the time does not support the notion that the parties' contract was illusory, but instead suggests Defendant breached the contract by failing to fulfill all of its obligations. As a result, Plaintiff makes no valid arguments that the Terms of Use or arbitration provision are illusory.

### D. Policy arguments

Plaintiff also raises various policy arguments. Plaintiff cites the Consumer Financial Protection Bureau's study of arbitration clauses, emphasizing the high percentage of contracts in various industries that include arbitration clauses. (Doc. No. 30 at 32-33). Plaintiff also cites the finding that the majority of consumers whose credit card contracts included an arbitration clause did not know that their contracts included an arbitration clause and that consumers do not understand the implications of arbitration clauses. (*Id*. at 36, 38). Plaintiff argues that the lack of public understanding regarding arbitration clauses supports finding arbitration agreements unconscionable. (*See id*.) Plaintiff also references The Arbitration Fairness Act, a bill that proposes to amend the FAA, as evidence that Congress does not support the Supreme Court's interpretation of the FAA. (*Id*. at 37).

Arguments grounded in policy are "more properly addressed to legislators or administrators, not to judges." *U.S. v. Jefferson-Pilot Life Ins. Co.*, 49 F.3d 1020, 1023 (4th Cir. 1995) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 864 (1984)). Plaintiff's policy arguments center around a report that analyzes the fairness of arbitration clauses in other industries and a bill that has not been adopted by Congress. None of the sources or policy arguments that Plaintiff presents are relevant to the Court's decision in this case. Plaintiff's policy arguments should be addressed to Congress, not the courts.

## CONCLUSION

The Court finds that the arbitration provision in the Terms of Use binds the parties to settle their current dispute through arbitration. Although the Terms of Use establish that Illinois law governs any disputes, the Federal Arbitration Act favors strict enforcement of arbitration provisions and preempts state laws that interfere with arbitration. While Plaintiff contends the arbitration provision should not be enforced because it is unconscionable and illusory, Plaintiff has failed to substantiate these arguments. Additionally, Plaintiff's policy arguments regarding the unfairness of arbitration provisions are matters for Congress to decide. Therefore, the Court will follow the Federal Arbitration Act purpose of "ensur[ing] that private arbitration agreements are enforced according to their terms," *Concepcion*, 563 U.S. at 344, and compel the parties to arbitrate their dispute.

## ORDER

**IT IS HEREBY ORDERED**

(1) Defendant's Motion to Compel Arbitration is **GRANTED;**

(2) This civil action is **STAYED** pending the arbitrator's decision, pursuant to 16 U.S.C. § 3;

(2) Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) is **DENIED AS MOOT;** and

(3) Plaintiff's Motion to Defer Consideration of Defendant's Motion to Dismiss is **DENIED AS MOOT.**

**SO ORDERED.**

Signed: June 21, 2016

Graham C. Mullen
United States District Judge